UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-cr-286 |
| | : | Chief Judge Beryl A. Howell |
| GRADY DOUGLAS OWENS, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR REVOCATION OF DETENTION ORDER PURSUANT TO 18 U.S.C. § 3145(b)**

The United States, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully submits this Response to Defendant's Motion for Revocation of Detention Order Pursuant to 18 U.S.C. § 3145(b) (ECF No. 13). The government respectfully opposes the Defendant's motion and asks that the defendant, Grady Douglas Owens, remain detained pending trial.

**PROCEDURAL HISTORY**

On March 30, 2021, the defendant was charged by complaint with: 1) 18 U.S.C. § 111(a) and (b) - Assault on a Federal Officer or Person Assisting a Federal Officer; 2) 18 U.S.C. § 231(a)(3) - Obstruction of Law Enforcement During Civil Disorder; 3) 18 U.S.C. § 1752(a) and (b) - Unlawful Entry, Disorderly Conduct, and Physical Violence into/in/on Restricted Building or Grounds; and 4) 40 U.S.C. § 5104(e)(2) – Violent Entry and Disorderly Conduct on Capitol Grounds.

On April 1, 2021, at the defendant's initial appearance in the Middle District of Florida, the government orally moved for the defendant's detention pending trial pursuant to § 3142(f)(1)(A). Magistrate Judge Daniel C. Irick presided over a detention hearing on April 2, 2021. After hearing the proffers of the government and the defense, as well as statements from a proposed

2

third party custodian, Magistrate Judge Irick considered the reasoning set forth in *United States v. Munchel*, 991 F.3d 1272 (D.C. Cir. 2021) and found "by clear and convincing evidence that no combination of conditions the Court can set will reasonably assure the safety of the community or any other person," and ordered the defendant held pending trial. *See* Exhibit 1, April 2, 2021 Detention Hearing Transcript at 30.

On April 7, 2021, a federal grand jury returned a six-count indictment against the defendant resulting from his conduct on January 6, 2021. The indictment charged: one count of Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); one count of Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon and Inflicting Bodily Injury, in violation of 18 U.S.C. § 111(a)(1) and (b); one count of Disorderly and Disruptive Conduct in a Restricted Building or Grounds using a Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A) and (B); one count of Engaging in Physical Violence in a Restricted Building or Grounds using a Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A) and (B); one count of Impeding Passage Through the Capitol Grounds or Buildings, in violation of 40 U.SC. § 5104(e)(2)(E); and one count of Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.SC. § 5104(e)(2)(F).

## FACTUAL BACKGROUND

This Court is no doubt familiar with the factual background related to the attack on the United States Capitol earlier this year. Briefly, at approximately 2:00 p.m. on January 6, 2021, individuals in a large crowd that had gathered on the Capitol grounds forced their way through, up, and over temporary and permanent barricades in place around the exterior of the U.S. Capitol Building. The crowd moved past officers of the United States Capitol Police ("USCP"), and advanced to the exterior façade of the building. They soon breached the Capitol, itself. The

individuals were not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by the USCP or other authorized security officials.

As the Capitol was breached, USCP requested assistance from the Metropolitan Police Department ("MPD") and other law enforcement agencies in the area to protect the Capitol, keep more people from entering the Capitol, and expel the crowd that was inside the Capitol. Multiple MPD officers and other law enforcement officers came to assist the USCP with the breach.

The victim in this case, MPD Officer C.B. and one of the witnesses, MPD Officer P.K. were amongst those MPD officers who were directed to report to the U.S. Capitol to assist the U.S. Capitol Police in their duties to maintain the security of the building and grounds. At approximately 1:53 pm, Officers C.B. and P.K., along with their colleagues, made their way through the west side of the Capitol grounds on their way to the lower west terrace tunnel area of the Capitol. *See* Exhibit 2, P.K. Body Worn Camera ("BWC").[1] They were dressed in full tactical gear and their uniforms were clearly marked in large white letters with "Metropolitan Police" on their backs and "MPDC" on their helmets. *Id*. They displayed badges on the front side of their uniforms. As the group moved through the crowds, people began berating them screaming, "Here come the storm troopers!" (*Id*. at 1:48:49), "Traitors!" (*Id*. at 1:59:00, 1:59:20), and "You're one of us!" (*Id*. at 1:59:39), among other things. As the crowd grew, officers had to begin to physically move individuals in order to continue their progress toward the lower west terrace area. *Id*. at 1:59:45. The officers' approximate physical location during the relevant time period is denoted below by the red arrow in the ariel map of the Capitol:

---

[1] Exhibit 2 is BWC video that will be provided to the Court and defense counsel via USAFx for viewing.



At approximately 1:59:56, Officer C.B. is seen pushing a man in a maroon hooded jacket to the right of the screen. *Id*. at 1:59:56. Just beyond the man who is pushed aside, the defendant can be seen in a red jacket and black knit cap holding a flag and a skateboard. *Id*. at 1:59:58. The



5

defendant himself does not appear to have been pushed or hit by the officers. He further has a direct view of officers wearing their clearly marked uniforms. Nevertheless, the defendant raises the skateboard up and over his head in a wind-up and swings it down hard on Officer C.B.'s head. *Id*. at 1:59:59-2:00:02.



A physical altercation ensues with the defendant, as well as several crowd members. *Id*. at 1:59:59-2:00:42. Officers spend time re-grouping after the altercation. *Id*. While the officers attempt to get their bearings, the defendant does not back away or exhibit any remorse or concern for his behavior—instead, he continues to yell at officers including, among other indiscernible statements, "How do you live with yourselves!?" *Id*. at 2:01:00. He also points at the officers menacingly and makes obscene gestures. *Id*. at 2:01:01-2:01:11.





Approximately two to three minutes after the assault and the resulting altercation with the crowd, officers are finally able to continue towards the lower west terrace area.[2] *Id.* at 2:01:48.

## ARGUMENT

Because the defendant is charged with a crime of violence—assault on a federal officer while using a dangerous weapon and inflicting bodily injury in violation of 18 U.S.C. § 111(a) and (b)—the government properly sought detention. 18 U.S.C. § 3142(f)(1)(A). The defendant does not dispute the crime-of-violence designation or the government's ability to seek detention. Nevertheless, if, as here, a defendant is ordered detained, the defendant may file a motion for revocation of the order with the court having original jurisdiction over the offense. 18 U.S.C. § 3145(b). The court having original jurisdiction over the offense shall promptly decide the motion. *Id*. Although the D.C. Circuit has not yet specifically addressed the issue, it appears that the review of the magistrate judge's order of release is *de novo*. *United States v. Little*, 235 F. Supp. 3d 272, 277 (D.D.C. 2017). Despite the *de novo* review, this Court can examine the lower court's findings and reasoning and may find its analysis persuasive. Finally, the reviewing court has discretion to call witnesses, review transcripts, or proceed by proffer. *Id.*

At the detention hearing, Magistrate Judge Irick considered the four factors under § 3142(g) that should be addressed and weighed in determining whether to detain a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his or her history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his or her release. Exhibit 1 at 21-30; *see also* 18 U.S.C. § 3142(g). To his credit, Magistrate Judge Irick further spent a considerable amount of time addressing the recent District of Columbia Circuit Court opinion in

---

[2] At this time there is no evidence that the defendant entered or trespassed into the Capitol building, itself.

8

*Munchel* to aid in his ultimate detention determination. *Id*. His thoughtful analysis remains applicable here.

Ultimately, this Court must consider whether conditions exist that the defendant will abide by and that will reasonably assure both his appearance as required and the safety of the community. As the defendant points out, the government is not asserting that he is a flight risk. Thus, this Court should consider detention only under the dangerousness prong of the analysis under the four aforementioned factors. *See* 18 U.SC. § 3142(g).

In consideration of these factors, the government respectfully submits that there remains no conditions or combination of conditions which can effectively ensure the safety of any other person and the community.

**1. Nature and Circumstances of the Offense Charged**

During the course of the January 6, 2021, siege of the U.S. Capitol, multiple law enforcement officers were assaulted by an enormous mob, which included numerous individuals with weapons, bulletproof vests, and pepper spray who were targeting the officers protecting the Capitol. Although the defendant points out that he was "dressed casually" and wore "no body armor or tactical gear," (ECF No. 13 at 4) as officers were making their way to the aid of other officers, he nonetheless violently assaulted one with a skateboard, smashing him in the head. In turn, a crowd that was already clearly on edge, turned against the group of officers resulting in an altercation between officers and a number of individuals. Those individuals included the defendant's own father.[3] Magistrate Judge Irick considered all of these facts in finding that this factor weighed in favor of detention. Exhibit 1 at 22-23.

---

[3] The defendant's father, Jason Douglas Owens, is currently also charged by way of criminal complaint because of his actions at the Capitol on January 6, 2021. *See United States v. Jason Douglas Owens*, 21-mj-376 RMM.

9

Further, the defendant is not only facing one felony count of violating 18 U.S.C. 111(a) and (b), he is also charged with one count of violating 18 U.S.C. 231(a)(3), and two counts of violation 18 U.S.C. § 1752(a) and (b)(1)(A) and (B). In total, he is charged with four serious felony offenses. Indeed, a violation of § 111(a) and (b) carries a maximum term of imprisonment of 20 years. There is no evidence that the defendant was at the Capitol for a peaceful protest. Instead, the video points to the conclusion that the defendant arrived ready for a fight. His attack on Officer C.B. was unprovoked, and after he struck Officer C.B., he didn't cower in fear and he certainly didn't back away in remorse. He instead stood his ground with the crowd and continued harassing and yelling at officers after having violently assaulted one.

As this Court has noted, "Grave concerns are implicated if a defendant actively threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated efforts to disrupt the certification of the electoral vote count during the riot, thereby encouraging others to engage in such conduct. These factors measure the extent of a defendant's disregard for the institutions of government and the rule of law, qualities that bear on both the seriousness of the offense conduct and the ultimate inquiry of whether a defendant will comply with conditions of release meant to ensure the safety of the community." *United States v. William Chrestman*, 2021 WL 765662, at *8 (DDC February 26, 2021) (Howell, C.J.). Here, the defendant did not just confront or threaten law enforcement officers, he smacked an officer in the head with a skateboard, seemingly for no real reason, and impeded the entire group's ability to do its job and help other law enforcement officers. Officer C.B. suffered a head injury, and his colleagues could have could easily have been injured in the resulting melee, all as a result of the defendant's violent behavior.

**2. Weight of the Evidence Against the Defendant**

The second factor to be considered, the weight of the evidence, also fully weighs in favor of detention. As discussed above, the evidence against the defendant includes BWC from at least two different officers. The video evidence is objective and unwavering. The BWC corroborates the assault relayed by Officer C.B. and shows precisely how the defendant assaulted him. Finally, the defendant has been identified in photographs from January 6th by at least three separate people, including a family member.

In addition, the physical evidence recovered from the defendant's apartment, as well as his parents' home, corroborates his presence and involvement in the assault. Law enforcement executed a search warrant of the defendant's apartment in Florida when he was arrested and recovered a red jacket consistent with the jacket he is seen wearing in the BWC and photographs. Law enforcement also recovered a black and white checkered shirt at his parents' home in Blanco, Texas that appears to be the shirt he was wearing on January 6th. Finally, flight information indicates that the defendant flew with his father from San Antonio, Texas to the D.C. area on January 5th, and returned to San Antonio on January 7th. The evidence against the defendant is overwhelmingly strong, and like Magistrate Judge Irick, this Court should find that the weight of the evidence weighs significantly in favor of detention.

**3. Defendant's History and Characteristics**

The government recognizes the defendant's lack of criminal history and that many letters of support have and may continue to be presented on his behalf. The defendant has offered up a third-party custodian who, by all accounts, is willing and able to serve in such a capacity. Nevertheless, Magistrate Judge Irick observed that the defendant is an admitted marijuana user who is struggling with school. Exhibit 1 at 25-26. Most notably, though, on January 6th the

defendant ventured down a new and unchartered path making it undeniably clear that he is indeed capable of violent and assaultive behavior. He was recorded striking an MDC officer, who was dressed in full riot gear, in the head with a skateboard. While it may have been out of character, this Court now knows with a high degree of certainly that the defendant is not afraid to engage in violence against law enforcement. Even more concerning is that he was willing to do so while those officers were simply attempting to ensure that Congress was able to complete its official business. His actions and clear willingness to fight and obstruct law enforcement, weigh against his release.

### 4. Danger to the Community

The fourth factor, the nature and seriousness of the danger to any person or the community posed by a defendant's release, also weighs in favor of the defendant's detention. The charged offenses involve a violent assault that was intended to interfere with the officers' ability to enforce the law. The defendant used physical force against a law enforcement officer, while simultaneously inciting those around him. And he did so at a time when it was apparent the mob was on edge and that it needed only a spark to ignite a fire. While perhaps such behavior might not have been predicted prior to January 6th, the defendant has since proven that he possesses a true lack of impulse control combined with an absolute ability to engage in violent behavior. The nature and circumstances of the offense as summarized, *supra*, are particularly probative of the defendant's current and future danger to the community and he should be detained.

### 5. Impact of *United States v. Munchel*

On April 16, 2021, this Court specifically directed the parties to address the points set forth in *United States v. Munchel* issued on March 26, 2021 by the District of Columbia Circuit Court. Magistrate Judge Irick also attempted to address some of the concerns set forth in the *Munchel*

opinion. Exhibit 1 at 27-30. For example, in support of his order of detention, Magistrate Judge Irick focused on *Munchel*'s categorical distinction between those who assaulted police officers on January 6th and "those who cheered on the violence or entered the Capitol after others cleared the way." Exhibit 1 at 27. Here, Magistrate Judge Irick observed that the defendant assaulted an officer by striking him in the head with a skateboard. He further distinguished the *Munchel* defendants' behavior finding that in *Munchel*, the defendants "didn't harm anyone or didn't vandalize any property, really posed no threat without the group." *Id*. at 28. In contrast, Judge Irick noted, the defendant here "did harm someone, and his conduct would have been harmful without a group, and, again, the evidence I have is that he ratcheted up the group through his violence." *Id*.

On April 26, 2021, in the matter of *United States v. Scott Kevin Fairlamb*, 21-cr-120 RL District Court Judge Lamberth also acknowledged the categorical distinction between violent and non-violent January 6th participants set forth in *Munchel*. In granting the government's motion for detention pending trial, the court observed that, "if any crime establishes danger to the community and a disregard for the rule of law, assaulting a riot-gear-clad police officer does." *Fairlamb*, 21-cr-120, ECF No. 31 at 11. Judge Lamberth pointed out that "*Munchel* recognized that in the detention context, courts may rely on defendants' violent actions undertaken on January 6 in determining their future dangerousness." *Id*. at 12 (*citing Munchel*, 991 F.3d at 1283 (requiring individualized assessment but looking to violent conduct on January 6 as probative of future dangerousness).

This case presents a very different set of circumstances than were present in *Munchel*, and its reasoning and analysis supports a finding of detention here. In *Munchel*, the Circuit Court observed that the defendants did not engage in any violence and were not involved in planning or coordinating. 991 F.3d at 1284. "The presence of the group," the court wrote, "was critical to their

13

ability to obstruct the vote and to cause danger to the community." *Id*. The court observed, therefore, that it was not clear how the defendants remained a danger to "act against Congress" given that the specific circumstances of January 6th had passed. *Id*. Here, as Magistrate Judge Irick found, the defendant's danger to the community is *not* a function of having been part of a larger group of individuals who were determined to stop the certification of the 2020 Presidential election. The defendant's danger is the result of his willingness to strike a uniformed police officer in the head with a skateboard that he used as a weapon. Such danger is a function of the defendant's individual characteristics, not the larger group. That willingness remains to this day and the defendant does pose a danger to the community pending the trial of this matter.

Finally, the defendant asks this Court to compare the current set of circumstances to a discrete set of other detention matters that resulted from the events of January 6th, including cases where the government chose not to seek detention. As Judge Lamberth explained, "The Bail Reform Act does not call for consideration of potential disparities between defendants. Instead, it calls for close analysis of the relevant factors and evidence in an individual case." *Fairlamb*, 21-cr-120, ECF No. 31 at 18-19. Further, "the government's failure to seek detention in one case does not doom its efforts to safeguard the community in another. The Bail Reform Act requires the Court to apply defendant-specific factors, not to judge dangerousness based on how the Executive exercised it prosecutorial discretion in distinguishable cases." *Id*. at 19.

The facts, the circumstances, and the applicable law dictate the result in this case. Clear and convincing evidence supports a finding that the defendant is a danger to the community and that he should be detained pending trial and the final resolution of this matter.

## CONCLUSION

The defendant has demonstrated he is capable and willing to engage in violent behavior as well as a willingness to impede and obstruct the law enforcement in the line of duty. Considering all of the factors set forth above and in light of the substantial sentence the defendant faces, there is no combination of conditions that will reasonably assure the safety of the community. He should be detained pending trial.

        Respectfully submitted,

        CHANNING D. PHILLIPS
        Acting United States Attorney
        DC Bar No. 415793

By:       /s/
        JENNIFER M. ROZZONI
        Assistant United States Attorney
        Detailee
        NM Bar No. 14703
        201 3rd Street, Suite 900
        Albuquerque, NM 87102
        jennifer.m.rozzoni@usdoj.gov
        (505) 350-6818