1

```
1                    UNITED STATES DISTRICT COURT
                      MIDDLE DISTRICT OF FLORIDA
2                          ORLANDO DIVISION

3    - - - - - - - - - - - - - - -X
     UNITED STATES OF AMERICA,     :
4                                  :
                                   : Case No.:
5          Plaintiff,              : 6:21-mj-1286-DCI
                                   :
6    vs.                           :
                                   : Orlando, Florida
7    GRADY DOUGLAS OWENS,          : April 2, 2021
                                   : 10:03 a.m.
8                                  :
           Defendant.              :
9    - - - - - - - - - - - - - - -X

10                TRANSCRIPT OF DETENTION HEARING
              BEFORE THE HONORABLE DANIEL C. IRICK
11                UNITED STATES MAGISTRATE JUDGE

12

13   APPEARANCES:

14   Counsel for Plaintiff:        Karen L. Gable
                                   US Attorney's Office
15                                 Suite 3100
                                   400 W. Washington Street
16                                 Orlando, FL 32801

17   Counsel for Defendant:        Karla M. Reyes
                                   Federal Public Defender's Office
18                                 201 S. Orange Avenue, Suite 300
                                   Orlando, FL 32801-3417
19

20

21   Proceedings recorded by digital recording.
     Transcript produced by computer-aided transcription.
22

23   Court Reporter:  Suzanne L. Trimble, CCR, CRR, RPR
                      Federal Official Court Reporter
24                    401 West Central Boulevard, Suite 4600
                      Orlando, Florida 32801
25                    e-mail: trimblecourtreporter@gmail.com
```

2

# T A B L E   O F   C O N T E N T S

PROCEEDINGS                                                    PAGE


                            April 2, 2021

TESTIMONY

**DAVID GREEN**, called by Defense
  Direct Examination By Ms. Reyes....................... 7


OTHER

Government's Proffer of Facts By Ms. Gable..............3
Government Argument on Detention By Ms. Gable..........11
Defense Argument on Detention By Ms. Reyes.............15
Judge's Ruling on Detention...........................21

# E X H I B I T S

  NO.                              MARKED/ADMITTED        PAGE


Defendant's Exhibits
  Nos. 1, 2, and 3                  admitted............ 10

3

P R O C E E D I N G S

THE COURTROOM DEPUTY:  Case No. 6:21-mj-1286, United States of America v. Grady Douglas Owens.

Counsel, please enter your appearances for the record.

MS. GABLE:  Good morning, Your Honor.  Karen Gable on behalf of the United States.  I'm appearing with Special Agent Jonathan Hannigan.

MS. REYES:  Good morning, Your Honor.  Assistant Federal Defender Karla Reyes on behalf of Mr. Owens, who is to my right.

THE COURT:  All right.  Good morning, everyone.

We're here for a detention hearing in this matter.  Is that right?

MS. GABLE:  Yes, Your Honor.

THE COURT:  All right.  Is the Government ready to proceed?

MS. GABLE:  We are, Your Honor.

THE COURT:  And the defense?

MS. REYES:  Yes, Your Honor.

THE COURT:  All right.  Government can proceed.

MS. GABLE:  Your Honor, as I stated yesterday, we intend to proceed by proffer.  We'll both proffer facts from the complaint affidavit, as well as the pretrial services investigative report.

So if I may, Your Honor.  Your Honor, the defendant has been

4

1   charged in a criminal complaint with various offenses, the most

2   serious of which is assaulting a federal officer by using a

3   dangerous weapon or causing bodily injury to the officer on

4   January 6th of 2021.  As set forth in the complaint, Your Honor,

5   the facts are that the defendant and his father attended the

6   events on January 6th together.  They flew from Texas -- which

7   is where the defendant's parents reside and where the defendant

8   is from -- from Texas to Washington DC on January 5th.  On

9   January 6th they attended the rally, the Stop the Steal Rally at

10   the Capitol -- or, you know, in DC and then made their way to

11   the Capitol.  The defendant brought his skateboard with him.

12      As he and his father descended on the Capitol, they entered

13   the restricted area of the Capitol, which is included in the

14   complaint affidavit, and it's outlined on page 1.  It's the red

15   area.  Everything within the red area is the restricted area.

16   The defendant and his dad were about 25 yards from the west side

17   area of the Capitol steps.  While they were there, the rioting

18   had erupted and rioters were unlawfully entering the Capitol.

19      Officer Boyle was part of a unit of MPD officers who were

20   dispatched to assist officers who were at the Capitol who were

21   actively engaged in trying to prevent rioters from unlawfully

22   entering the Capitol, as well as trying to gain control over

23   those rioters who had already unlawfully entered the Capitol.

24   Officer Boyle and his unit were in clearly marked uniforms, and

25   they were making their way through the crowd, through the back

5

1   of the crowd, to try to make their way up to the front of the

2   Capitol.

3        The defendant and his father were in that crowd, and as

4   Officer Boyle in the -- on that unit tried to make their way

5   through the crowd, the defendant took his skateboard and

6   intentionally -- and this is on video -- intentionally hit

7   Officer Boyle in the face area and the head area with his

8   skateboard causing serious injuries to Officer Boyle.  He

9   sustained a concussion, and he also sustained injuries to a

10  finger.  His father is also captured shoving police officers as

11  they were trying to make their way through the crowd.

12       And these rioters -- when the defendant struck the officer,

13  the video shows that it just ratcheted up all of the rioters

14  that he was with, and they really started to shove and interfere

15  with these officers in the lawful performance of their duties in

16  trying to make their way up to the steps of the Capitol to

17  assist other officers who were under assault by rioters and

18  trying to deal with that situation.

19       The evidence is strong in the case.  As I, you know, said to

20  the Court, the defendant's actions are captured on video.  But

21  at this point now three witnesses have identified the individual

22  who struck Officer Boyle as the defendant.  And we also have the

23  plane tickets.

24       From the pretrial services report, Your Honor, I would

25  proffer to the Court that the defendant's parents live in Texas,

6

1   that he is here as a student.  He has a passport.  He has

2   traveled extensively to Belize, Bahamas, Honduras, Cayman

3   Islands, Guatemala, Mexico.

4       He is living in an apartment.  His lease expires at the end

5   of this month on that apartment.  He lives here alone.  He is

6   single.  He doesn't have any children.

7       He has what appears to be a part-time job.  It says

8   "contracted."  I think that's a contracted part-time employee.

9   But apparently he's not working very much, as he only earns

10  about $300 a month.

11      He uses marijuana.  The last time that he used marijuana was

12  three days prior to his arrest.

13      And I would further proffer that the maximum term of

14  imprisonment for the assault charge is 20 years.

15      So that's what I would proffer to the Court and then I will

16  argue.

17          THE COURT:  Is the search warrant affidavit in this

18  case unsealed?

19          MS. GABLE:  It's not.

20          THE COURT:  Okay.  So the defense doesn't have a copy

21  of that?

22          MS. GABLE:  No.  They don't have that.

23          THE COURT:  Okay.  Understood.

24          MS. GABLE:  But they have the complaint affidavit,

25  Your Honor.

1           THE COURT:  Let me hear from the defense.

2           MS. REYES:  Your Honor, I would call David Green.

3           THE COURT:  All right.  Mr. Green, sir, if you would

4    come forward and stand in the witness box and be sworn.

5           THE COURTROOM DEPUTY:  Please raise your right hand.

6            (**DAVID GREEN**, called by Defense, is sworn.)

7           THE WITNESS:  I do.

8           THE COURTROOM DEPUTY:  Please state and spell your

9    name for the record.

10          THE WITNESS:  David Mallory Green.

11          THE COURT:  How do you spell Green?  How do you spell

12   Green?

13          THE WITNESS:  Just like the color.

14          THE COURT:  Okay.  Sometimes it has an E.  So I want

15   to be sure.  You can have a seat, sir.

16                        DIRECT EXAMINATION

17   BY MS. REYES:

18   **Q**   Good morning, sir.

19   **A**   Good morning.

20   **Q**   How do you know Mr. Grady Owens?

21   **A**   I am his great uncle.

22   **Q**   And where do you live?

23   **A**   95 Hickory Tree Road, Longwood.

24   **Q**   How long have you lived there?

25   **A**   23 years.

1    **Q**    How long have you --

2         Do you have a relationship with Mr. Green?

3    **A**    Yes.

4    **Q**    And how would you characterize that relationship?

5    **A**    Good.  Good.

6    **Q**    When was the last time you saw him?

7    **A**    I believe it was probably two months ago.

8    **Q**    Does he hail from Texas?

9    **A**    Yes.

10   **Q**    And prior to him starting college, was he living with you?

11   **A**    He -- once he started school, yes, he lived with us.

12   **Q**    For about how long?

13   **A**    I believe about four to six months.

14   **Q**    Did you hear Ms. Gable say that his lease is up coming in a

15   few weeks?

16   **A**    Yes.

17   **Q**    Are you aware if his parents are trying to secure housing

18   for him?

19   **A**    I'm not sure, no.

20   **Q**    In the event that they're unable to get another apartment

21   for him, would he be able to live with you?

22   **A**    Absolutely.

23   **Q**    And are you aware of the charges that he's been accused of?

24   **A**    I am now.

25   **Q**    Okay.  Have you formed an opinion as to his character?

1    **A**    Yes.

2    **Q**    And what is that opinion?

3    **A**    He's a good person.

4    **Q**    Notwithstanding the seriousness of the charges, are you

5    still supportive of him?

6    **A**    Yes.

7    **Q**    Is your wife also present in the courtroom?

8    **A**    Yes, she is.

9    **Q**    And is she also supportive of him?

10   **A**    Yes.

11   **Q**    Okay.  Would you -- have I explained to you what a

12   third-party custodian would entail?

13   **A**    Yes.

14   **Q**    And are you willing to serve in that capacity?

15   **A**    Yes, I am.

16   **Q**    Do you have any qualms in your ability to serve in that

17   capacity?

18   **A**    No.  No, I do not.

19   **Q**    Do you believe that Mr. Owens would respect your authority?

20   **A**    Absolutely.

21   **Q**    Could you tell Judge Irick if you believe Mr. Owens is a

22   danger to the community?

23   **A**    Yes.

24   **Q**    Do you believe he's a danger to the community?

25   **A**    No, absolutely not.

1  **Q**   And why not?

2  **A**   I know his character.  He's a good person.

3  **Q**   Do you have a DUI from 30 years ago?

4  **A**   Yes, I do.

5  **Q**   Okay.  Do you have any other criminal convictions besides

6  tickets?

7  **A**   No.

8           MS. REYES:  Okay.  I tender the witness, Your Honor.

9           THE COURT:  Cross-examination?

10          MS. GABLE:  No, Your Honor.  I have none.

11          THE COURT:  All right.  Thank you, sir.  You can step

12  down.

13      Any other evidence from the defense?

14          MS. REYES:  Your Honor, I would move Exhibits 1

15  through 3 into evidence.  I provided copies to Ms. Gable.  One

16  is an e-mail from Mrs. Owens, and the other two are e-mails from

17  Full Sail University indicating his enrollment status and his

18  expected date of graduation based on his progress thus far.

19          THE COURT:  All right.  Any objection?

20          MS. GABLE:  No, Your Honor.

21          THE COURT:  All right.  They'll be admitted, Defense

22  Exhibits 1, 2, and 3.

23      (Defendant's Exhibit Nos. 1, 2, and 3 were admitted into

24  evidence.)

25          MS. REYES:  No other evidence or testimony, Your

1  Honor, just argument.

2  THE COURT:  All right.  Let me hear from the

3  Government.

4  MS. GABLE:  Thank you, Your Honor.  As the Court

5  knows, we are seeking detention under 18, 3142.  In determining

6  release or detention in this case, Your Honor, the Court is to

7  consider factors that are listed under 3142(g).

8  First is the nature and circumstances of the offense,

9  including whether the offense is a crime of violence.  So in

10 this case, Your Honor, the offense is a crime of violence.  And

11 as we outlined during our proffer to the Court, the nature and

12 circumstances of the offense are quite serious.  It takes a lot

13 for someone to use their skateboard as a dangerous weapon and to

14 hit an officer who was lawfully performing his duties, trying to

15 assist other officers during the riot on that day, to obstruct

16 that officer and to hit him in the head so hard that the officer

17 sustained a concussion and injuries as a result.  So the nature

18 and circumstances of this case weigh in favor of detention, Your

19 Honor.

20 The weight of the evidence against the defendant is strong.

21 As proffered by the Government, the defendant's criminal actions

22 are captured on video, specifically the law enforcement

23 officer's body cam footage, as well as several individuals who

24 have identified the individual who struck the officer as the

25 defendant.

1      Regarding the history and characteristics of the person,

2  other than the conduct that he engaged in on January 6th of

3  2021, we would just note that he doesn't have strong ties to the

4  community.  I understand that the defense has brought the

5  testimony of his great uncle who apparently is residing in the

6  area, but other than that, I mean, the defendant is living in an

7  apartment where the lease expires at the end of the month.  He's

8  here to go to school.

9      It's clear that his ties really are in Texas, that that is

10  where his family is.  He doesn't really have a job here.  He

11  has -- he's not married.  So his ties I would describe as

12  limited to the Middle District of Florida.

13      He appears to use marijuana on a regular basis, which,

14  again, is just another factor for the Court to consider

15  regarding his history and characteristics.

16      You know, and, finally, Your Honor, really for the

17  Government the biggest concern here is that the evidence is

18  strong, but it's the nature of the crime that was committed in

19  this case, that it was a crime of violence, and while I

20  understand we have the circumstances that occurred on

21  January 6th, those are serious, those were serious events, and

22  the defendant's conduct here is serious, and it does show that

23  he does present a danger, and we just don't think that the Court

24  can set any conditions that would reasonably assure the safety

25  of the community, given the defendant's actions on January 6th.

13

1    So therefore, Your Honor, we do ask the Court to detain the

2    defendant.

3          THE COURT:   Are you familiar with *United States v.*

4    *Munchel*, which is the DC Circuit's very recent opinion

5    concerning the release or detention of defendants in these

6    cases?

7          MS. GABLE:   I'm not familiar with the opinion, Your

8    Honor.

9          THE COURT:   Okay.  Well, I'm well familiar with it.

10   So I'll be discussing that in my decision.

11      But I'm happy to hear from the defense.

12          MS. GABLE:   Okay.  And what is the case, Your Honor?

13          THE COURT:   It's United States Court of Appeals for

14   the District of DC.  It's *United States v. Munchel,*

15   *M-u-n-c-h-e-l.*  I have the slip copy of that.  So I don't have a

16   Westlaw or other citation for it.  It was issued on March 26th

17   of 2021, which I believe was last Friday, and it remanded the

18   District Court, a decision of detention, but also with a lot of

19   commentary on these cases, as well as the differences between

20   some cases and others.

21      And I'll just note that in *Munchel*, you know, the defendant

22   was detained by the District Court on dangerousness grounds, and

23   in that case there was no violent act by the defendant, and so

24   the Court seriously considered that issue.  Here, we do have a

25   violent act.  And the District of DC stated, and I'll give you

1   this one piece of it right now, that -- and this is a quote --

2   "In our view, those who actually assaulted police officers and

3   broke through windows, doors, and barricades and those who

4   aided, conspired with, planned, or coordinated such actions are

5   in a different category of dangerousness than those who cheered

6   on the violence or entered the Capitol after others cleared the

7   way.  I see this defendant as being one of those who was engaged

8   in assaulting police officers, and he is of that different

9   category of defendants.

10      So I just -- I just give you that because I am persuaded by

11  this decision.  I believe it's controlling in the DC circuit.  I

12  don't know that it's controlling on me, although this case is a

13  DC case.  It creates an interesting issue there.  But it's

14  certainly persuasive to me.  So I just -- I just give that to

15  both sides right now so you can consider it.

16              MS. GABLE:  Thank you, Your Honor.

17              THE COURT:  Ms. Reyes.

18              MS. REYES:  Your Honor, I just pulled up the case.

19  May I have a brief opportunity to read it?

20              THE COURT:  Sure.  I will.  Although, you know, I'll

21  say this is the kind of thing that I expect both sides to be

22  aware of.  I mean, this was a widely published circuit decision

23  on exactly this issue.  This is not a -- you know, this is a

24  widely publicized issue.  This is something that could have been

25  easily -- the Court found this case on exactly this issue.  And

1    I think the parties could as well.  So I'll give you an

2    opportunity to read the case and a break, but, again, this is

3    something that should have happened before we got here.

4        We'll be in recess.  You let me know when you're ready.

5        (Recess at 10:19 a.m., until 10:37 a.m.)

6            MS. REYES:  Your Honor, thank you for the opportunity

7    to read *Munchel*.  Ms. Gable and I have both had the opportunity.

8    I'm just going to begin with my argument first and then I'll

9    address *Munchel*, and just so that we have it for the record,

10   it's 2021 Westlaw 1149196.

11           THE COURT:  Yeah.  And I confirmed that it's a

12   published decision in the DC Circuit.  So, you know, regardless

13   whether or not it's arguably controlling on me, it certainly

14   would be controlling upon the District Court that would review

15   any order I made.

16           MS. REYES:  Thank you, Your Honor.

17       As noted in *Munchel* -- or as cited to in *Munchel*, but as the

18   Court is well aware, in *Salerno* the Supreme Court has indicated

19   that in our society liberty is the norm.  The Government has

20   failed to prove by clear and convincing evidence that Mr. Owens

21   is a danger and by a preponderance of the evidence that he's a

22   serious risk of flight.

23       As it relates to the nature and the circumstances of the

24   offense, I do recognize that there's very serious -- in terms of

25   the weight of the evidence, as the Court knows, I have requested

1  a preliminary hearing to confront and challenge the Government's

2  evidence, and that hearing has been scheduled for next week.

3  But looking at the complaint, do I acknowledge the social media

4  accounts and the fact it's been sworn do by Special Agent

5  Hannigan.

6       I do believe that the history and characteristics of

7  Mr. Owens weigh heavily in favor of release.  You have a

8  21-year-old.  He just turned 21 last week.  You have a

9  21-year-old with absolutely no prior criminal history.  And his

10 arrest yesterday morning was without incident.  They went to the

11 apartment that's listed in the pretrial services report.  He

12 answered the door, and he was taken in without any issues.

13      He is here -- as noted in the pretrial services report, he's

14 a junior at Full Sail University in Winter Park.  He has an

15 apartment that he's been living at for a year there, but he's

16 been in our community for approximately two years.

17      He is single.  The Government is correct in that regard.

18 However, he does have a girlfriend who I expected to be here but

19 is not, but he is in a relationship.

20      He is a full-time student.  So he doesn't have a full-time

21 job because he is a student.  The employment that's mentioned in

22 the pretrial services report is correct.  He does do that on a

23 part-time basis, especially now due to COVID.

24      As it relates, Your Honor, to Defense Exhibit 1, his mother,

25 she couldn't be here today due to travel, but she is completely

1    willing to provide an address to pretrial services report --

2    pretrial services, if the Court does find that release is

3    appropriate.  They're actively looking to secure housing for

4    him.

5        As the Court can see in Defense Exhibits 2 and 3, he is

6    expected to graduate February of next year, and his education

7    has been paid in full.  So my understanding is it's an

8    accelerated program.  He's a junior this year, but he is on

9    target to graduate next year.  So even though he doesn't have

10   deep-rooted ties to this community, the ties of his education, I

11   would believe -- I would suggest to the Court should be

12   compelling to find that he does have ties to the Middle District

13   of Florida.

14       THE COURT:  I would note, though, that Defense

15   Exhibit 2 states that his original graduation date was pushed

16   back due to course failures and course withdrawals before he

17   reentered.  So it seems that he was out for some time, and he's

18   had difficulty completing his educational program.

19       MS. REYES:  I saw that too, Your Honor.  I recognize

20   that.

21       David Green testified unrebutted under oath that he has

22   lived in our community, specifically in Longwood, for 23 years.

23   He knows his great nephew.  He thinks highly of him.

24   Notwithstanding these charges, he's still supportive of him.  He

25   traveled here.  I was in touch with him last night.  So he came

1    here as soon as possible.  I would propose him as a third-party

2    custodian.  I think he would be appropriate.  Longwood and

3    Winter Park are, I would say, no more than a 30-minute drive.

4    And David Green has committed to serving in that capacity, and I

5    think he would be suitable, notwithstanding his DUI conviction

6    from 30 years ago.

7        The marijuana use is troubling because it's illegal, but

8    there are conditions that the Court can set to mitigate that.

9        As the pretrial services report indicates, he has no mental

10   health issues.  He has no physical issues.  He has no resources

11   to flee, even if he wanted to.

12             THE COURT:  I do take some issue with that because --

13   two reasons.  One, his means to commit this offense was his

14   father, right?  So his father flew him in on January 5th and

15   flew him out on January 7th and, in fact, went there with him

16   and participated.  So he does have means, though they're not on

17   the pretrial services report as being his personally.  Also, the

18   letter I received from his mother states that they are fully

19   financially responsible for him and will continue to be so.  So

20   really the means he has to flee and commit offenses are

21   undisclosed to me because they're his parents resources, which

22   are at least significant enough to fly you and your child to a

23   rally and back over a weekend like that.  So that's fairly

24   significant.

25        And that also gives a nationwide reach, frankly, to his

19

1   ability to commit these kind of offenses.  So I wonder what the

2   community is in this situation.

3         MS. REYES:  I would say the community is our

4   community, Your Honor.

5         THE COURT:  Well, when you say danger to the

6   community, right --

7         MS. REYES:  Understood.

8         THE COURT:  -- that's what I'm talking about.  So the

9   danger here was in Washington DC from Texas, and he lives in

10  Florida.  So that's quite a broad area he covered in relation to

11  this offense.  So that's just what I'm considering.

12        MS. REYES:  Yes, Your Honor.

13        THE COURT:  And I just say that in response to your

14  comment concerning his resources.

15        MS. REYES:  Your Honor, I'm not asking for his ROR.  I

16  am proposing that the Court follow pretrial services report, but

17  I'm also recommending that he be -- that the Court find that

18  Mr. Green is a suitable third-party custodian and appoint him.

19  And I'm also adding the condition of home detention.  Because if

20  he's not in school and he doesn't have a specific job lined up

21  with his employer, then there really is no reason for him to

22  travel anywhere, other than DC to meet with his attorney.

23    So briefly, Your Honor, there are many, many differences

24  between our case and the *Munchel* case, and based on those

25  differences, I believe that the Court -- I understand the Court

20

1   finding this persuasive, but in *Munchel* the Government proceeded

2   by proffer as they did here, but the District Court had a

3   50-minute video, 5-O minute video, to watch, themselves.  So the

4   Court was able to observe the defendant commit these acts.

5       The defendant in *Munchel* was twice convicted for marijuana

6   possession.  The defendant in *Munchel* had a Taser on him, which

7   law enforcement seized that day.  The defendant in *Munchel* had a

8   tactical vest on.  The defendant in *Munchel* lied and said that

9   the only weapon that he had on him was a pocket knife.  The

10  defendant in *Munchel* actually entered the Capitol building.  The

11  defendant in *Munchel* has shown no remorse.  And not a huge

12  distinction, Your Honor, but the defendant in *Munchel* -- the

13  unlawful entry that he was charged under was while armed.  That

14  differentiates Mr. Owens' case a little bit.  And I would just

15  offer to the Court that my client is very remorseful.  And the

16  defendant in *Munchel* was 30.

17      So I think that notwithstanding the seriousness, there are

18  conditions that this Court can set, and I ask the Court to find

19  that release is appropriate in this case.

20          THE COURT:  All right.  Thank you.

21      Anything else from the Government?

22          MS. GABLE:  Your Honor, we stand by our argument.

23  Thank you.

24          THE COURT:  All right.  I'm going to take this under

25  consideration.  We'll be in a brief recess.  I'll come back out

1  and give my ruling in a few minutes.

2       (Recess at 10:46 a.m., until 11:21 a.m.)

3            THE COURT:  All right.  We're back on the record,

4  everyone.

5       Before I go ahead and rule, is there anything else from the

6  Government?

7            MS. GABLE:  No, Your Honor.

8            THE COURT:  From the defense?

9            MS. REYES:  Your Honor, the pretrial services report

10  indicates the location of his passport is unknown.  During this

11  break I've been able to confirm it's in Texas, and if the Court

12  finds that release is appropriate, we can get it FedExed here to

13  the clerk's office.

14            THE COURT:  All right.  Thank you for clarifying that.

15       All right.  Because this is a crime of violence, under

16  3142(f)(1)(A), the Court shall hold a detention hearing at the

17  request of the Government, which we've done.  And so at that

18  hearing it's the Court's inquiry and the Court must determine

19  whether any condition or combination of conditions will

20  reasonably assure the appearance of such person as required and

21  the safety of any other person in the community.  In making that

22  determination, the Court looks to 3142(g), and there are a

23  number of factors enumerated in the statute.  So I'll go through

24  those factors now.

25       The first factor is the nature and the circumstances of the

1    offense.  The statute enumerates certain kinds of offenses.  One

2    of them is a crime of violence, and this is a crime of violence

3    as charged.  There are three felonies charged here.  One is an

4    assault, which is a violent crime, assault on a law enforcement

5    officer.  The other is violent entry on the Capitol grounds.

6        I've considered different aspects of the nature and the

7    circumstances of this offense.  First is the defendant's

8    personal conduct.  I boil that down to the fact that the

9    defendant struck a law enforcement officer with a weapon so

10   violently that it caused a concussion to that law enforcement

11   officer, and this is while the law enforcement officer was

12   trying to assist other officers who were struggling on that day

13   on January 6th.

14       It's also relevant to the nature and circumstances of this

15   offense that this occurred during the incident on January 6th at

16   the U.S. Capitol ground.  I think some descriptions of that

17   event that's in *Munchel* are relevant to the Court's analysis

18   here.  The District Court in *Munchel* described that incident --

19   that incident to include the use of force to subvert a

20   democratic election and arrest the peaceful transfer of power.

21   "Such conduct threatens the republic itself...indeed, few

22   offenses are more threatening to our way of life."  That's a

23   quote from the District Court in *Munchel*.

24       At the conclusion of the Circuit Court's opinion in *Munchel*,

25   the Circuit Court noted as follows:  "It cannot be gainsaid that

1    the violent breach at the Capitol on January 6th was a grave

2    danger to our democracy, and that those who participated could

3    rightfully be subject to detention to safeguard the community."

4        I would note also that the defendant engaged in this conduct

5    with his father, that their violence -- because it's been

6    proffered to me that his father also shoved law enforcement

7    officers -- occurred at 2:00 p.m. on January 6th, which was

8    right at the height of this event, it was at about the time the

9    Capitol itself was breached or being breached, and that

10   according to the Government, the defendant's conduct ratcheted

11   up the crowd and led to more harassment of law enforcement

12   officers.

13       The next factor under 3142(g) that I consider is the weight

14   of the evidence.  Here, the weight of the evidence appears to be

15   strong based on the criminal complaint affidavit that I

16   reviewed, as well as the Government's proffer.  According to the

17   Government's proffer, there are video -- there's video of the

18   incident.  There are photographs in the criminal complaint that

19   show the defendant with the skateboard and the officer.  There

20   are three witnesses that identify this defendant as the one who

21   struck the law enforcement officer.  And, of course, there are

22   the plane tickets purchased by the defendant's father for the

23   two of them to travel there and back.

24       The next factor under 3142(g) is the history and

25   characteristics of the defendant.  Now, this is a number of

1    factors, and I'll go through them.  The first factor enumerated

2    in the statute is the defendant's character, and I'll come back

3    to that one at the end.  Next we look at the physical and mental

4    condition of the defendant.  Both are good.

5        We look to the family ties the defendant has, as well as

6    other ties, but I'll note in relation to all of these ties that

7    the defendant has none in the prosecuting district, a few to

8    this district, and to the extent he has strong ties arguably,

9    they're perhaps in Texas, although no real evidence has been

10   submitted to the Court concerning those ties, other than the

11   fact that the defendant is from Texas and his parents reside in

12   Texas who financially support him.

13       Another factor is the length of the residence in the

14   community.  I interpret that to be this community.  He does have

15   a bit here.  He has been at Full Sail a few years.

16       Another factor is the defendant's employment.  Again, he's a

17   full-time student, it's been alleged, at Full Sail, but I would

18   note I don't know how entirely accurate that is, again, because

19   of the Defense Exhibit 2.  It says that the defendant's original

20   graduation date was pushed back due to course failures and

21   course withdrawals before he reentered.  So that assumes that at

22   some point he was not a student.  I'm not entirely sure.  So at

23   least during some portion of this two years, he was having

24   difficulties in or out of school.  And that's despite the fact

25   that the evidence I have before me is that his school is fully

1    paid for by his parents in advance.

2        The defendant has -- next factor is financial resources.  On

3    paper the defendant has few financial resources, but, again, his

4    parents provide him significant resources.  They pay for his

5    apartment here, which I have the cost of that in the pretrial

6    services report.  It's significant.  They pay for Full Sail,

7    which is, again, a significant expense.  They pay for his travel

8    by air around the country.  And he has a number of vacations as

9    well that are in the pretrial services report, including travel

10   to a number of foreign companies.  I assume if he has no

11   financial ties, all of these, you know, fairly significant

12   expenses are paid for by his parents, and so he has those

13   significant resources at his disposal.

14       Another factor is the defendant's past conduct and criminal

15   history.  Now, this is probably the factor most in his favor

16   because he has no criminal history, and he has no past conduct

17   that would indicate that he would otherwise be a danger to the

18   community or pose a risk of flight.  So those factors certainly

19   weigh in his favor.

20       Another factor is the defendant's drug and alcohol use.  He

21   admitted to both alcohol use and drug use recently and

22   regularly.

23       Another factor is record of court appearances.  He has no

24   history concerning this one way or the other because he, again,

25   has never been in any trouble.  So there's just no evidence

1  before me on whether or not he would appear for court if

2  required.

3      Another factor is whether or not he's on supervision for

4  another criminal offense at the time he committed this offense.

5  He's not, again, because he has no criminal history.

6      Circling back to his character.  You know, it's difficult to

7  make a character determination in a situation like this because

8  the statute actually requires me just to look at character, just

9  that word.  You know, on this record I have someone who is very

10  young, who doesn't have a criminal history, but allegedly

11  committed a violent offense while he's having difficulty in

12  school and using drugs.  So, I mean, what do you do with that

13  character?  I'm not sure that that weighs in his favor or that

14  it balances one way or the other, certainly not on this

15  evidence.

16      I've considered Mr. Green's testimony and I fully credit it,

17  but there's just not much I think that he could even give

18  concerning character.  He just said his character was good.

19      The next factor I look at is the nature and seriousness of

20  the danger posed by the defendant.  Again, he assaulted a law

21  enforcement officer who was attempting to do his job in

22  assisting other law enforcement officers as part of a -- and the

23  defendant did so as part of a riot, which posed a grave danger

24  to our democracy, and, again, I'm quoting that from the *Munchel*

25  decision.

1     So if we're looking also to some of the issues in *Munchel*,

2    again, Munchel the circuit remanded the case to the District

3    Court to consider a few factors that it believed the District

4    Court did not adequately consider.  So I want to make sure I

5    consider those factors on this record and address -- at least

6    attempt to address the concern raised by the Circuit Court in

7    *Munchel*.

8     First, the Circuit Court had concerns that the District

9    Court didn't identify an articulable threat to the community

10   based on the defendant's conduct on January 6th, so in other

11   words, tying what the alleged danger to the community is to the

12   conduct, the offense conduct, in the case.  Here, in considering

13   that analysis the *Munchel* Court on a number of occasions

14   identified that, you know, Munchel didn't physically harm any

15   person, didn't commit any violence and assaulted no one.  Here,

16   we have the opposite answer to all of those questions.  This

17   defendant did physically harm a person.  This defendant did

18   commit violence.  This defendant did assault someone.

19    So, again, to quote the *Munchel* Court, In our view, those

20   who actually assaulted police officers on January 6th are in a

21   different category of dangerousness than those who cheered on

22   the violence or entered the Capitol after others cleared the

23   way.

24    So I have considered that factor, and I do think that the

25   defendant's conduct in this case on January 6th is tied directly

1    to his potential danger to the community, which is that he did

2    commit a violent offense, and I would note also that a violent

3    offense was committed fairly early in the day in concert with

4    his father and it ratcheted up the crowd, according to the

5    evidence presented to me.

6         Also, the District Court, according to the Circuit in

7    *Munchel*, failed to demonstrate and consider the specific

8    circumstances that made the offense possible.  The point being,

9    as I interpret *Munchel*, that the defendant in *Munchel* because he

10   didn't harm anyone or didn't vandalize any property, really

11   posed no threat without the group, and that's the analysis

12   there.

13        Here, again, we have a different situation.  Here, this

14   defendant did harm someone, and his conduct would have been

15   harmful even without a group, and, again, the evidence I have is

16   that he ratcheted up the group through his violence.

17        The defense identified a number of factors that they assert

18   differentiate or distinguish this case from *Munchel*.  One was

19   that it was a 50-minute video in *Munchel*.  I would say that's

20   not a differentiating factor here because there is a video here

21   and there are photographs, and so although that video wasn't

22   played, it was proffered to me that it exists.  And so I don't

23   find much difference there.

24        The defendant in *Munchel* had two marijuana convictions, it's

25   asserted by the defense, while this defendant has used marijuana

1    regularly, including three days ago.  So I don't see much

2    difference there.

3         The defendant in *Munchel* used a Taser.  This defendant had a

4    skateboard that he used to allegedly give a law enforcement

5    officer a concussion.  The fact that the defendant had a

6    tactical vest on I really find no moment.  Defense asserts that

7    the defendant in *Munchel* lied concerning a pocket knife.  That's

8    not clear from the decision in *Munchel*.  I think the allegation

9    is that there was something else in the waist pack the defendant

10   *Munchel* had.  But the Taser itself was carried on his waist, and

11   so that was never at issue.

12        It's true that the defendant in *Munchel* entered the Capitol.

13   And I don't have any evidence before me that this defendant

14   entered the Capitol.  So that is a different factor.  And it's

15   true that the defendants in *Munchel* expressly showed no remorse

16   through social media after the fact, and it's true that they had

17   this different offense of unlawful entry while armed, though I

18   find that the offenses here are more serious than the offenses

19   in *Munchel*.  So I really don't find that's a distinguishing

20   factor in favor the defense.

21        I mean, it's true that there's a ten-year age difference

22   between the defendants.  But to the extent there are some

23   differences there, I don't find them significant, and it's

24   really the reasoning and explanation in *Munchel* that I am

25   persuaded by and I think applies to this case and the Court's

30

1   analysis.

2       So overall I have four factors in general that I look at.  I

3   think the first factor weighs in favor of detention.  I think

4   the second factor weighs in favor of detention.  I think the

5   third factor, though it has some strong positives for the

6   defendant, is at best neutral for him because there are

7   positives and negatives.  And I find that the fourth factor

8   weighs in favor of detention.

9       I don't find that detention is appropriate based on serious

10  risk of flight because there's frankly just been no evidence

11  presented to me that would really justify that.

12      But I do find by clear and convincing evidence that no

13  condition or combination of conditions the Court can set will

14  reasonably assure the safety of the community or any other

15  person.  So therefore, sir, you'll be remanded to the custody of

16  the United States Marshal Service pending further proceedings in

17  this case.

18      Anything else from the Government?

19          MS. GABLE:  No, Your Honor.

20          THE COURT:  From the defense?

21          MS. REYES:  Your Honor, we object to the Court's

22  factual findings and legal conclusions.

23          THE COURT:  Understood.  Thank you.

24  We're at recess.

25      (WHEREUPON, this matter was concluded at 11:35 a.m.)

31

* * *

<u>CERTIFICATE OF REPORTER</u>

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter.


   /s/ Suzanne L. Trimble_____          4/14/21
  Suzanne L. Trimble, CCR, CRR, RPR           Date
  Official Court Reporter