UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 21-cr-286 |
| : | Chief Judge Beryl A. Howell |
| GRADY DOUGLAS OWENS, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S SUPPLEMENTAL BRIEF RELATED TO DEFENDANT'S MOTION FOR REVOCATION OF DETENTION ORDER PURSUANT TO 18 U.S.C. § 3145(b)**

The United States, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully submits this Supplemental Brief to Defendant's Motion for Revocation of Detention Order Pursuant to 18 U.S.C. § 3145(b) (ECF No. 13). The government has also filed a response to defendant's motion (ECF No. 14). The government continues to respectfully oppose defendant's motion and asks that the defendant, Grady Douglas Owens, remain detained pending trial.

**BACKGROUND**

The parties completed briefing on the defendant's motion for revocation of the detention order on May 5, 2021. ECF Nos. 13, 14, 15. That same day, the government discovered additional video evidence of the defendant and his father on January 6, 2021, in a different part of the Capitol, attempting to enter the building and fighting with law enforcement. On May 7, 2021, the government submitted the videos as Response Exhibits 3 and 4 to the Court and opposing counsel via USAFx. On May 7, 2021, the government also received medical records related to the assault of MPD Officer C.B. and provided those records to defendant. Defendant motioned the Court to consider the records in relation to its detention decision, without objection

2

and under seal, on May 10, 2021. This Court granted the motion via a minute order on May 11, 2021.

Also, on May 10, 2021, the Court held a status conference and hearing related to defendant's motion for revocation of the detention order. After discussion, the Court ordered supplemental briefing related to the government's Response Exhibits 3 and 4 and Officer C.B.'s medical records. It also welcomed, considering the instruction in *United States v. Munchel*, 991 F.3d 1272 (D.C. Cir. 2021), additional discussion of detention decisions in other cases involving defendants charged for crimes resulting from the events on January 6. The government will address all three areas in this supplemental brief.

## ARGUMENT

I.  **Government Exhibits 3 and 4 Show a Second Assault and Support the Fact that Defendant's Behavior on the West Lawn Was Not a Mistake.   Defendant Intended to Engage in Violent Conduct with Law Enforcement Officers on January 6.**

As this Court has acknowledged, many of the investigations from January 6, 2021 are ongoing. With literally thousands of hours of public and surveillance video available to review, it can be no surprise that additional criminal conduct may be found *after* a defendant has been formally charged by complaint, or even by the grand jury. Such is the case here. On May 5, 2021, investigators located Capitol surveillance video from January 6, 2021. The video was submitted for the Court and defendant via USAFx in two parts. Both exhibits provide a view from inside the Capitol building looking out the East Rotunda (Columbus) Doors. Exhibit 3 is two minutes, 56 seconds and lasts from approximately 3:25 p.m. to 3:28 p.m. Exhibit 4 is two minutes, 36 seconds and lasts from approximately 3:28 p.m. to 3:30:30 p.m.   Throughout both videos, defendant and his father, Jason Owens, are seen in or just outside the doorway, engaging with law enforcement and attempting to fight their way into the Capitol building.



**Government Exhibit 3 at 2:50 (approximately 3:27:50 p.m.) – Defendant Grady Owens is circled in red. Defendant's father, Jason Owens, is circled in yellow and is wearing a baseball hat.**

Toward the end of Government Exhibit 4, Jason Owens is seen re-opening the doors after law enforcement has attempted to close them. Exhibit 4 at 1:47. As Jason Owens engages with law enforcement, defendant is seen just outside the doors. *Id*. at 1:48. A moment later, defendant once again raises his skateboard and swings it hard at an officer. *Id*. at 1:53-1:55.

4



**Government Exhibit 4 at 1:53 – Defendant is raising a skateboard above his head.**



**Government Exhibit 4 at 1:54 – Defendant comes down with a skateboard at the law enforcement officer.**

While it remains unclear whether defendant physically strikes the officer, in response the officer immediately knocks defendant down, and then points at defendant as the officer backs up towards the doors.[1] *Id*. at 1:54-2:00.

---

[1] The United States is continuing its investigation and is attempting to identify the law enforcement officer in the video.



**Government Exhibit 4 at 1:55 – MPD officer pushes defendant back.**



**Government Exhibit 4 at 1:59 – MPD officer points at defendant.**

  In his reply brief, defendant takes issue with the government's assertion that his charged assault of the MPD officer on the west side of the Capitol was an intentional act. Indeed, in his reply brief counsel asserts, "Grady instinctively used his skateboard as a protective shield against an unknown threat," ECF No. 15 at 2, essentially making a claim of self-defense. Yet nearly 90 minutes later, on the opposite side of the Capitol building, defendant is once again seen wielding his skateboard as a weapon, and attempting to strike law enforcement officers as he and his

father try to force their way into the Capitol. The defendant's wind-up with the skateboard – raising it over his head to bring maximum force – occurs in both instances and it is powerful evidence of his intent. Any suggestion that defendant somehow mistook the identity of officers dressed in riot gear passing by him on the west lawn, or that he did not have an intent harm to those officers, is undermined by the defendant's nearly-identical violent behavior an hour and a half after his first assault.

This Court can find guidance in another case from this district, *United States v. Joseph Lino Padilla*, Cr. No. 21-214 JDB, which involves a defendant charged with a series of assaults resulting from the events at the Capitol on January 6. In *Padilla*, the defendant engaged in three separate assaults of officers over the course of three hours. *See Padilla*, ECF No. 24 at 3-4, 11-12. Indeed, Padilla first pushed a barricade against officers and then attempted to push "a large sign with wheels and a metal frame toward the barricade," and knocked it down. *Id*. at 3-4. Three hours later, he threw a pole into a mass of officers, and appeared to hit one. *Id.* In assessing detention, Judge Bates found that "the nature and circumstances of the charged offenses weigh[ed] strongly in favor of detention." Defendant arrived at the Capitol with an expectation that violence might occur, repeatedly engaged in violent conduct, and evinced a willingness to injure or incapacitate law enforcement officers in order to advance his political beliefs. *Id*. at 14.

Here, defendant engaged in close-range fighting with officers, not once, but twice, and over the course of an hour and a half. Although he characterizes the first assault as a surprise in which he was defending himself, he is seen seconds later, not cowering or showing remorse, but screaming at officers. He asks the officers how they live with themselves and makes leud gestures. Then, 90 minutes later, the defendant is seen again – this time on the opposite side of the Capitol – pushing against officers to gain entry to the building. And when he is unable to

7

make entry, he and his father fight hand-to-hand with officers. Defendant once again, raises up his skateboard and swings hard at another officer. In response, the officer is able to knock defendant to the ground. Only then does defendant finally retreat from the area.

**II.     Officer C.B.'s Medical Records Indicate an Injury to his Head and Concussion and Judge Irick was Correct in Using the Information as Part of his Detention Determination.**

The Court has accepted as a sealed exhibit Officer C.B.'s medical records from the injuries he suffered because of his duty at the Capitol on January 6, 2021 and can evaluate them accordingly. Based on what defendant claims to be a lack of information/diagnosis in the records, however, defendant wants this Court to believe that Officer C.B. fabricated his assertion of concussion out of whole cloth when he told the investigating agent on January 15, 2021 that he sustained a concussion and an injury to his right pinky as a result of the assault by the defendant. Officer C.B. believes that the skateboard caused the injury to his head. Without delving significantly into the contents of the sealed exhibit, the records indicate that Officer C.B. suffered multiple contusions, a head injury, and injury to his right pinky as a result of his encounters on January 6. After seeking medical attention on January 7, 2021, he returns for an appointment on January 12th following up for a "concussion" and right pinky finger injury. In his own hand-written narrative, Officer C.B. mentions various items that he was struck with on January 6, and although he doesn't mention the skateboard specifically, he references "other hard objects." The medical records provide support for Officer C.B.'s statements and this Court should spend little time focusing on defendant's claims that Officer C.B. somehow fabricated his injuries from January 6.

Further, Judge Irick properly included the information related to Officer C.B.'s injury when he concluded that defendant should be detained pending trial. Unlike defendant claims,

though, the injury was far from the only piece of information used in his detention calculus. Judge Irick not only looked at all of the detention factors (nature and circumstances of the offense, weight of the evidence, history and characteristics of the defendant, and nature and seriousness of the danger posed by the defendant), but also included a robust analysis of *Munchel* in his findings. In all, he spent approximately ten pages of what was a 30-page detention hearing transcript making findings to support his detention decision. During those ten pages he only mentioned Officer C.B.'s concussion once. While the injury was certainly a factor in his analysis, it was the totality of all of the facts and circumstances, in addition to the reasoning of *Munchel*, that ultimately led Judge Irick to detain defendant.

Finally, should this Court consider the defense argument, it should be in the context of assessing the weight of the evidence, which is significant. The charged assault is on video and there can be no doubt that defendant used his skateboard as a dangerous weapon when he struck Officer C.B. And while the medical records may not mention the skateboard particularly, they provide a solid basis for the bodily injury that Officer C.B. suffered, including his head injury, contusions, and injured pinky finger. Given the unambiguous body worn camera evidence of the defendant's violent assault on Officer C.B., this Court should reject defendant's attempt to hide behind the fact that Officer C.B. was repeatedly assaulted by rioters on January 6, as were so many other officers.

**III.   When Compared to other January 6 Cases Involving Detention, the Facts of this Case are Worthy of Detention.**

In *United States v. Munchel*, which is more fully discussed in the government's original briefing (ECF No. 14), the Circuit Court acknowledged that every detention "decision by the government is highly dependent on the specific facts and circumstances of each case," and that "those facts and circumstances are best evaluated by the District Court" should a defendant "raise

9

the issue." 991 F.3d 1273, 1284 (D.C. Cir. 2021). Having raised the issue, the government now addresses the various cases raised by defendant and this Court.[2]

In *United States v. Klein,* Cr. 21-236 JDB, a case where the defendant is charged with a number of crimes including 18 U.S.C. § 111(a)(1) and (b) for using a shield to push against officers' bodies, Judge Bates reversed the magistrate judge's order of pretrial detention. *United States v. Klein*, 2021 WL 1377128 (D.D.C. April 12, 2021) (Bates, J.). In doing so, the court emphasized that the government had not submitted "that Klein intended to injure officers," nor that Klein had made any attempts to battle or fight the officers with his bare hands or other objects. *Id.* at *8. Instead, Klein's actions primarily involved pushing up against officers' riot shields and were "distinguishable from other detained defendants charged under § 111(b) who clearly sought to incapacitate and injure members of law enforcement by striking them with fists, batons, baseball bats, poles, or other dangerous weapons." *Id*. In *Klein*, the defendant's intent appears to have been to advance the mob, not injure officers.

*Klein's* same reasoning applies in two other cases cited by defendant. *See United States v. Coffee*, Cr. No. 21-327 RC (defendant used a crutch to push against officers for the benefit of the mob and did not appear to injure any officers, though he also made unremorseful comments post-January 6); *see also United States v. Sanford*, Cr. No. 21-086 PLF, (defendant threw a fire extinguisher into a crowd of officers, striking at least three helmeted officers in the head, but there were no injuries). The assaults discussed in the aforementioned cases do not appear to have been targeted, close assaults. They instead involved using a weapon or an object like a weapon to advance or push against officers as a group. Alternatively, they involved throwing or tossing items into a large group of officers. Unlike *Klein*, *Coffee*, or *Sanford*, defendant here specifically goes

---

[2] Notably, unless otherwise noted, all of the cases discussed include a charge of assault of an officer with a deadly or dangerous weapon, in violation of 18 U.S.C. § 111(a)(1) and (b).

after and strikes Officer C.B. on the west lawn. Then, and admittedly somewhat like the comparative defendants, when he is first seen at the Capitol doors, defendant appears to be using his body to push on officers to gain entry. But his behavior changes when he moves away from the doorway and strikes at a second officer. His actions are indicative of someone attempting to fight and injure officers, not simply to push through a line as part of a larger mob of people. The assaults are far more intentional, violent, and personal.

Defendant also points to three cases involving assaults on officers where the government did not seek detention, *United States v. Gossjankowski*, Cr. No. 21-123 PLF, *United States v. Blair*, Cr. No. 21-186 CRC, and *United States v. Leffingwell*, Cr. 21-005 ABJ. It should not be lost on this Court that all three of these cases were charged within days of January 6, and in light of the unprecedented and violent events of the day, the government, itself, was trying to determine how to begin and calibrate the prosecutions of hundreds of individuals who violated the law and engaged in violent behavior that day.

In *Gossjankowski*, the defendant was given a taser by a third party—that is, he did not bring the weapon to the Capitol on January 6. Gossjankowski then brought the taser with him into the lower west terrace tunnel of the Capitol. At the time of his detention hearing, the government refrained from seeking detention, as there was no evidence that the defendant had used the taser on law enforcement. It was later learned, however, that the defendant did attempt to use the taser on law enforcement, and he was later indicted on multiple charges including one violation of 18 U.S.C. § 111(a)(1) and (b). Nevertheless, there remains no indication that officers suffered any injuries related to the use of the taser. In light of its earlier decision not to seek detention, the government chose not to change its tact in the *Gossjankowski* case. In *Blair*, the defendant was also charged with a violation of 18 U.S.C. § 111(a)(1) and (b), but for using a lacrosse stick to

11

push officers back in various ways. Like *Gossjankowski*, no officers appear to have been injured as a result of Blair's assaults with the lacrosse stick. Given the unique procedural nature of these cases as some of the very first January 6 cases that were charged, and that there remain no claims that Gossjankowski or Blair injured any officers, the matters are dissimilar to the current case before this Court.

In *Leffingwell*, the defendant used his hands and fists to assault officers on January 6, but there was and remains no allegation that he used a dangerous weapon or that he inflicted bodily injury. Indeed, his current charges, among others, include two violations of 18 U.S.C. § 111(a). *Leffingwell,* superseding indictment, ECF No.15. *Leffingwell* is not currently charged with a crime of violence, a factual circumstance that is categorically different from Defendant Owens.

When conducting its comparison among the various cases, this Court should also note that the *kind* of assault that the defendant carried out on Officer C.B. – winding up and violently swinging a skateboard at Officer C.B.'s head – shows that it was intended to cause injury and that it was likely to do so. The fortuity of whatever other violent attacks Officer C.B. suffered that day, and their precise connection to the head injury for which he sought medical care the following day, does nothing to alter the dangerousness of the person who carried out that violent strike, and who repeated his violent swing at another officer soon thereafter.

Finally, at the May 10 hearing on this matter, this Court noted the recent unpublished judgment in *United States v. Worrell*, 21-cr-292 RCL, wherein a panel of the District of Columbia Circuit Court affirmed the district court's order denying the defendant's emergency motion for reconsideration of detention. *United States v. Worrell*, No. 21-3020, Doc. 1897399, (D.C. Cir. May 5, 2021) (per curium). In doing so, the court found that the appellant had not shown that the district court's dangerousness determination was clearly erroneous and wrote:

> As this court observed in *United States v. Munchel*, 991 F.3d 1273 (D.C. Cir. 2021), with regard to January 6, "those who actually assaulted police officers and broke through windows, doors, and barricades, and those who aided, conspired with, planned, or coordinated such actions, are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way." *Id*. at 1284. In contrast to the defendants in *Munchel*, as the district court here found, appellant "actually assaulted police officers" with pepper spray gel. *Id*.

*Id*. at 1-2. The Circuit Court once again affirmed the categorical distinction made in *Munchel*, between those who actually assaulted officers and those who didn't. Here, defendant engaged in sustained and deliberate attempts to injure or incapacitate officers not once, but twice, and even with a 90-minute cooling off period.

The facts, the circumstances, and the applicable law dictate the result in this case. Clear and convincing evidence supports a finding that the defendant and his father assaulted multiple officers on January 6, and he is a continuing danger to the community. He should be detained pending trial and the final resolution of this matter.

**CONCLUSION**

The government incorporates its original response in full, in addition to this supplemental brief, and again respectfully submits that there remains no conditions or combination of conditions which can effectively ensure the safety of any other person and the community and the defendant should remain detained pending trial.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
DC Bar No. 415793

By:  /s/
JENNIFER M. ROZZONI
Assistant United States Attorney
Detailee
NM Bar No. 14703
201 3rd Street, Suite 900
Albuquerque, NM 87102
jennifer.m.rozzoni@usdoj.gov
(505) 350-6818

I HEREBY CERTIFY that I filed the foregoing
pleading electronically through the CM/ECF system
which caused the parties or counsel of record to be
served by electronic means, as reflected on the Notice
of Electronic Filing, and other methods of service as
indicated therein on May 13, 2021.

 /s/
JENNIFER M. ROZZONI
Assistant United States Attorney