IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | Case No. 21-cr-00286-BAH |
| ) | |
| **GRADY DOUGLAS OWENS,** ) | |
| **Defendant.** ) | |
| ) | |

**SUPPLEMENT TO DEFENDANT'S MOTION FOR REVOCATION OF
DETENTION ORDER PURSUANT TO 18 U.S.C. § 3145(b)**

The tragic events of January 6th resulted in deaths, injuries, destruction and the gravest threat to our Republic since the Civil War. Those who advocated and pursued violence that day will be held accountable.

Grady Owens has led a peaceful life serving others. His family and friends give authentic accounts of this gentle young man. The government's evidence shows Grady defending himself, not targeting officers.

I.   *BRADY* INFORMATION

Government counsel kindly provided discovery last night that constitutes exculpatory evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, FBI Special Agent Erik Potrafka recently interviewed two officers stationed at the East Rotunda door who were in closest proximity to Grady. Neither officer claimed an assault by Grady Owens.

Metropolitan Police Department (MPD) Officer S did not recall anyone attempting to hit him with a skateboard on January 6th. *See* Exhibit A (FBI 302 interviews on May 13 & 14,

2021). He was not hit by a skateboard nor did he receive any injuries at that location. Officer S viewed two still images from surveillance video previously provided to the Court and confirmed he was the MPD officer with a lifted face shield. After reviewing the surveillance video, Officer S did not recall any interaction with Grady.

United States Capitol Police (USCP) Officer B did not recall seeing a skateboard on January 6th. *See* Exhibit B (FBI 302 interview on May 12, 2021). Officer B did not recall any interaction with Grady and was not injured during the events captured by surveillance video. He also confirmed that he did not receive any medical attention on January 6th.

## II.   DETENTION ORDER BASED ON ERRONEOUS PROFFER

What was the government's essential proffer on dangerousness to Magistrate Judge Irick at Grady's detention hearing on April 2nd in the Middle District of Florida - Orlando?

> (T)he defendant took his skateboard and *intentionally* -- and this is on video -- *intentionally* hit Officer B in the face area and the head area causing *serious injuries* to Officer B. He sustained a *concussion*, and he also sustained injuries to a finger. (*See* Government Response, ECF No. 14, Ex. 1 at 5; emphasis added).

The government did not play a video at the hearing so Magistrate Judge Irick had to rely on this bald alarming claim of violence.

As detailed in Defendant's Reply (ECF No. 15 at 1 - 3), this proffered evidence that Grady *intentionally* assaulted a police officer is just wrong. MPD Officer C.B. initiated contact with Grady by forcibly grabbing him from behind with a gloved hand. In this split second moment, Grady instinctively protected himself from this unknown threat. Reply, Ex. A at 13:59:59 (Officer C.B.'s Body Worn Camera (BWC) video from January 6, 2021). Grady did

2

not *intentionally* target and strike Officer C.B.  The video evidence does not even show where the alleged contact occurred.  And as the Court noted at the May 10th hearing, there is no discernable sound of a hard object striking Officer C.B.'s helmet.

As to the proffer that Officer C.B. suffered *serious injuries* caused by Grady.  First, the officer did not seek medical attention on January 6th and was never diagnosed with a concussion.  Second, despite the government's claim that Grady is trying to "hide behind" subsequent assaults by other rioters (Government Supplemental Brief - ECF No. 20 at 9), Officer C.B.'s BWC video shows him expertly handling his baton with all his fingers *and* clearly voicing commands with strong physical activity *before* his next violent event at 14:02:00.  *See* Reply, Ex. A.

Officer C.B. first described his injuries in a hand-written report over twenty-four hours later.  *See* MPD Injury or Illness Report prepared on January 7th at 3 p.m. (Officer C.B.'s medical records sealed by Court's Minute Order on May 11th).  As discussed at the May 10th hearing, he specifically claimed that his head was struck by "bricks" and "baseball bats".  He also wrote that his right pinky finger was "smashed and hit many times."  In this Report, he did not claim to have lost consciousness or suffered *any* symptoms associated with a concussion.

At his first medical evaluation on January 7th, Officer C.B. was diagnosed with a "Crushing injury of right little finger" and contusions - a minor bruise on his jaw.  He confirmed that he had not lost consciousness on January 6th, his exam revealed no signs of concussion and he was *not* diagnosed with a concussion.

The government misinterprets the concussion reference in the January 12th follow up appointment notes.  This was not a medical diagnosis.  It was an appropriate evaluation of a patient who initially reported being hit in the head by bricks and baseball bats.  And fortunately

3

for Officer C.B., he exhibited no concussion symptoms at any of his medical visits.

According to the FBI 302 interview of Officer C.B. on January 15th, he claimed that an unknown subject struck him in the head with a skateboard causing a concussion and finger injury. *See* Exhibit C. He made this revised assessment after viewing his BWC video - he saved the video and provided the folder and file name to the FBI. This gave Officer C.B. ample opportunity to watch all 53 minutes including multiple violent encounters after his contact with Grady. Given the officer's lucidity and digital dexterity immediately thereafter, it is difficult to fathom how Grady could have played *any* contributing role in causing Officer C.B.s diagnosed injuries.

The seconds and minutes following Officer C.B.'s collision with Grady are illuminating. At 14:00:30, Officer. C.B. can be seen securely gripping his service baton with all five right hand fingers. Reply *supra*, Ex. A. Officer C.B. is not stumbling or exhibiting signs of disorientation. At 14:01:08, he is certainly not concussed when he clearly and forcefully starts yelling "APO" at Grady. *Id.* Having prosecuted dozens of APO (Assault on a Police Officer) cases during the 1990's as an Assistant United States Attorney in Washington, D.C., counsel knows this acronym. But Grady had no clue what that meant or why Officer C.B. was shouting at him. At this point, Grady had lost his tight ski cap and was clearly dazed from the collision with Officer C.B. All of Grady's gestures were a shocked and startled response to Officer C.B.'s physical and verbal actions.

Facts matter. The government's attempt to minimize these material mistakes in their original detention hearing proffer is disturbing. If Magistrate Judge Irick had been given an accurate account - that Officer C.B. initiated contact with Grady Owens by surprising him from

4

behind and Grady used the skateboard as a shield to protect himself - he would not have been detained for the past two months.

Officer C.B. gave this wrong information to the FBI on January 15th - that Grady intentionally struck him in the head with a skateboard specifically causing a concussion and injured right pinky. Magistrate Judge Irick relied on that wrong claim to detain Grady on April 2nd. And it is still wrong in the Court's *de novo* review of that detention order.

**III.     COMPARATORS**

Unlike those defendants who have been recently held (*e.g. Padilla* and *Fairlamb*) and released (*e.g. Klein*), on 111(b) charges, Grady Owens did not intentionally strike or harm a police officer.[1] At our May 10th hearing, the Court invited counsel to address the three distinct assaults found in *Padilla* and how it applies to our case.

Grady's actions on January 6th were not intentional or willful acts of violence designed to injure a police officer. As detailed above, there is no evidence that Officer C.B. sustained an injury from his contact with Grady. Based on last night's *Brady* disclosure that Grady had no contact with the officers at the East Rotunda door, this record is devoid of *any* act by Grady that harmed a police officer or that Grady engaged in multiple assaults of police officers.

The specific facts of this case do not support a finding that Grady's actions on January 6th constitute an "unmitigable threat to public safety". *Padilla* at 13, fn 4. As Judge Bates noted: "Assaults can take many forms, and although a defendant's *eligibility* for pretrial detention is often determined by a categorical approach, see 18 U.S.C. § 3142(f)(1)(A)-(E), the *propriety* of detention under the BRA is not." *Id.* (emphasis added) The district court should

---

[1] *United States v. Joseph Lino Padilla*, 21-cr-214-JDB, Memo. Op. (ECF No. 24), filed May 4, 2021;
*United States v. Scott Kevin Fairlamb*, 21-cr-120-RCL, Memo. Op. (ECF No. 31), filed April 26, 2021;
*United States v. Federico Guillermo Klein*, 21-cr-236-JDB, Memo. Op. (ECF No. 29), filed April 12, 2021.

5

probe the precise nature of a defendant's actions - including the type of force employed - when assessing 18 U.S.C. § 3142(g) factors. *Id.* (respectfully disagreeing with the *Fairlamb* opinion that the D.C. Circuit "absolve(d) the district court of the need to probe the precise nature of defendant's actions" in *United States v. Munchel*, 991 F.3d 1273 (D.C. Cir. 2021) . This is not a rebuttable presumption case and the government bears a heavy burden to prove by clear and convincing evidence that Grady Owens presents "an articulable prospective threat to the safety of the community." *Klein* at 1.  And unlike defendants *Padilla*, *Fairlamb* and others detained pretrial, Grady made no inflammatory social media postings before, during or after January 6th and he has never advocated violence against any person, group or government.  Grady has no criminal record, not even a speeding ticket.

## IV. ADDITIONAL 18 U.S.C. § 3142(g)(3)(A) FACTORS

The following information is respectfully submitted to the Court regarding Grady's history and characteristics under 18 U.S.C. § 3142(g)(3)(A) to support his release.

1) Three sermons by Pastor Larry Williams about the evils of racism, oppression and hate from June 2020.  He has been the Lead Pastor at Community Bible Church Bulverde in Spring Branch, Texas since 2006.  This is Grady's church - a loving, inclusive and welcoming community.  See  https://vimeo.com/showcase/7220745

2) With her husband's approval, Shannon Owens describes the challenges Jason Owens faces as a Type 1 Diabetic. (Exhibit D).  The letter recounts prior episodes of irrational behavior and temporary memory loss.  Grady was concerned about his father's health on January 6th and stayed by his side to protect him.

Grady Owens is currently being held at the Grady County Jail in Chickasha, Oklahoma. His mother Shannon is available to make the six hour drive to bring Grady back to a Court-approved Blanco residence with appropriate conditions such as Home Detention and GPS Monitoring. Pretrial Services Officer Christine Schuck has confirmed the availability of courtesy supervision by Pretrial Services in the Western District of Texas - Austin Division.

Respectfully submitted,

_____/ s /_____
Pat Munroe Woodward, Jr., Esq.
D.C. Bar No. 436662
1783 Forest Drive, No. 330
Annapolis, MD  21401
Phone:  202-246-4679
Fax:  410-216-9812
patmwoodwardjr@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of May 2021, I electronically filed the foregoing pleading with the Clerk of Court using the CM / ECF system, which will send an electronic notification of such filing to all counsel of record.

_____/s/_____
Pat Munroe Woodward, Jr., Esq.
Counsel for Mr. Owens