IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA   ) | |
| ) | |
| v.                                                     ) | Case No. 21-cr-00286-BAH |
| ) | |
| GRADY DOUGLAS OWENS,       ) | |
|                Defendant.       ) | |
| ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Grady Owens bears responsibility for his actions on January 6, 2021. He was a 20 year old college student who joined his father and grandparents at a protest rally. He heard the 45th President falsely claim that his re-election victory had been stolen. Grady repeated this absurdity as he climbed Capitol Hill.

Grady made a terrible split-second mistake when he hit Officer C.B. with a skateboard. The following information does not excuse that conduct but is offered for mitigation as the Court reviews the factors set forth in 18 U.S.C. § 3553(a). Grady and his father Jason Owens are scheduled for a sentencing hearing on June 23, 2023 at 9:30 a.m.

**I.      BACKGROUND**

On April 1, 2021, federal agents arrested Grady in Winter Park, Florida on a complaint warrant filed in this Court on March 30th (ECF No. 1). That same day, an initial appearance and temporary detention occurred in the United States District Court for the Middle District of Florida (Orlando Division). On April 2nd, a magistrate judge held a detention hearing and, based on the government's proffered evidence regarding an alleged violation of 18 U.S.C. § 111(b), Assaulting, Resisting or Impeding an Officer by Using a Dangerous Weapon (Statement

of Facts, ECF No. 1-1), ordered Grady detained pending trial because "No condition or combination of conditions of release will reasonably assure the safety of any other person and the community." *See* Order of Detention Pending Trial (MDFL 6:21-mj-1286-DCI, ECF No. 13). This Court released Grady from pretrial detention on May 28, 2021 and ordered home detention (ECF No. 25; Memorandum Opinion - ECF No. 26). Grady successfully completed substance abuse treatment on February 22, 2022, and home detention ended on June 13, 2022. (Minute Order). Grady has fully complied with the Court's release orders for over two years.

A fourteen-count superseding indictment with Co-defendant Jason Owens was returned on November 17, 2021, which included the § 111(b) allegation from the complaint and original indictment of April 7, 2021. On November 10, 2022, Grady pleaded guilty to the lesser included offense in Count 2 - Assault, Resisting or Impeding an Officer, 18 U.S.C. §111(a)(1) and Count 13 - Disorderly Conduct in a Capitol Building, 40 U.S.C. § 5104(e)(2)(D).

The Presentence Investigation Report (PSR) confirms that Grady has a criminal history score of zero and a criminal history category of I (PSR ¶ 55). For Count 2, the total offense level of 21 gives a recommended guideline range of 37 to 46 months (Id. ¶ 93). Count 13 is a Class B misdemeanor with no applicable guidelines (Id. ¶ 94). Counsel respectfully submits that applying the following 3553(a) factors justifies a variance below the guideline range to a sentence of one year and one day.

**II.     Statutory Factors - 18 U.S.C. § 3553(a)**

**A.     Nature of Offense - § 3553(a)(1)**

At the first stage of this case, the government exaggerated the nature of this offense. Claims that Grady violently struck an officer in the head and gave him a concussion were simply

2

not true.  This error misled a magistrate judge to detain Grady in maximum security for two months in Florida and Oklahoma.

In its detention ruling, the Court began with the § 3142(g)(1) factor - nature and circumstances of the offense charged:  "First is the defendant's personal conduct.  I boil that down to the fact that the defendant struck a law enforcement officer with a weapon *so violently that it caused a concussion* to that law enforcement officer…" (Gov't Response Ex. 1 at 22; ECF No. 14-1; emphasis added).  This judicial ruling about Grady's alleged violent conduct, based on false information, led to his wrongful pretrial detention.

But for a conscientious prosecutor who is now a federal magistrate judge, we would not know about these errors.  This mistake deserves more than a simple time served credit application.  Grady struggled to survive among defendants charged with violent crimes including murder.  His arrest generated publicity and several inmates accused him of being a Nazi and white supremacist. They threatened his life constantly.

Prior to his transport from Florida to Oklahoma by the United States Marshals on May 13, 2021, guards put him in a holding cell after midnight with no place to sleep.  In the morning, officials shackled his feet and hands, crowded him into a van with 10 other inmates and sent them to a holding cell at the federal courthouse.  About three hours later, the Marshals herded this group into another van for a two hour drive to the Jacksonville airport.  Grady had no bathroom access for half the day.  They kept him outside drenched by a cold rain for an hour before he finally boarded the plane to Atlanta shivering uncontrollably.  He remained shackled throughout the flight which stopped in Atlanta and then proceeded to Oklahoma City.  They sent him to a jail in Grady County, Oklahoma from which this Court released him on May 28, 2021.

Grady suffered serious trauma from his two-month stay in maximum security. He spent a year in counseling trying to recover from this unjustified detention.

In assessing the true nature of the offenses for which Grady has accepted responsibility, this Court's approach to release cases gives helpful guidance. The first factor to consider is "the nature and circumstances of the offense charged." 18 U.S.C. § 3142(g)(1). In *United States v. Chrestman*, 2021 WL 765662, at 7 - 8 (D.D.C. Feb. 26, 2021) (Howell, C.J.), this Court set forth six "guideposts" for assessing "the comparative culpability of a given defendant in relation to fellow rioters." Whether a defendant:

> (1) "has been charged with felony or misdemeanor offenses" - Grady pleaded guilty to one felony and one misdemeanor.
>
> (2) "engaged in prior planning before arriving at the Capitol" - Grady made no plans to engage in criminal conduct prior to the January 6th riot.
>
> (3) "carried a dangerous weapon during the riot" - Grady used the skateboard as designed until the crush of the crowd forced him to pick it up.
>
> (4) "coordinat[ed] with other participants before, during, or after the riot" - there is no evidence that Grady and his father conspired to commit criminal acts.
>
> (5) "assumed either a formal or a de facto leadership role in the assault by encouraging other rioters' misconduct" - No such evidence.
>
> (6) "the nature of "the defendant's words and movements during the riot" including whether he "damaged federal property," "threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated efforts to disrupt the certification of the electoral vote count during the riot" - Grady did

4

not damage any property; while he repeated false claims from the protest rally, he did not broadcast or promote the riot on social media; and he had an abrupt encounter with the officer.

The lack of aggravating facts against Grady that exist in other January 6 riot cases, such as violent social media postings, sustained battles with multiple police officers, and coordination with other agitators, bolsters our perspective that this was anomalous behavior arising from a startling incident.

In this context, we also ask the Court to consider Jason Owens' medical condition on January 6, 2021. Grady was gravely concerned about his father's health and erratic behavior. Grady stayed with his father to protect him on both sides of the Capitol. He is even captured on video from the East Rotunda entrance grabbing his father from behind and pulling him back outside away from the officers. We expect counsel for Jason Owens to provide the Court with substantiation.

B.   **Grady's History and Characteristics - § 3553(a)(1)**

Grady's letter to the Court shows the extreme remorse he carries for his conduct on January 6th. (Exhibit 1). He accepts responsibility for his mistakes and bad decisions. It also marks his growth and maturity earned from an intense period of self-reflection. Grady has maintained full employment and been promoted. He has no criminal record, not even a speeding ticket.

The letter from his longtime girlfriend Hannah Halvorsen beautifully captures Grady's kind and helpful nature. (Exhibit 2). Her steadfast relationship with Grady during this difficult period reveals their mutual strength of character.

Counsel has previously filed 33 letters of support for Grady from family and friends in the release pleadings (ECF Nos. 13-1, 13-2, 13-3 & 15-1).  We respectfully ask the Court to consider these letters anew as to Grady's history and characteristics pursuant to § 3553(a).  By all accounts, Grady is a gentle non-violent person.  These letters of love confirm that Grady Owens is a reliable young man who is devoted to his family, friends and church and is most certainly not a threat to anyone or the community.

The strong ties to his parents, siblings, grandparents, aunts, uncles and cousins form a secure familial bond of perpetual support.  His friends confirm Grady's peaceful and selfless nature.  His service with the church community, leading music worship and missionary trips abroad, is particularly inspiring.  All of these affirmations give the Court reassurance about Grady's history and characteristics.

      **C.**      **Avoidance of Unwarranted Sentence Disparities -   § 3553(a)(6)**

This Court has sentenced defendants for § 111(a)(1) violations.  Of particular note are the cases of Gregory Rubenacker (21-cr-193-BAH) and Cody Mattice & James Mault (21-cr-657-BAH).  What distinguishes these defendants from Grady Owens is their deliberate and sustained confrontations with law enforcement.

Mr. Rubenacker broke into the Capitol and infamously led a mob chasing a Capitol Police Officer up the stairs.  He then attacked multiple officers and left no doubt about his intentions by broadcasting his riotous conduct on social media. (Stipulation of Facts, ECF No. 48).  The Court sentenced him to 41 months.  This ongoing assaultive conduct stands in stark contrast to Grady's surprise encounter with Officer C.B. outside the Capitol.

Messrs. Mattice and Mault planned their attack on the Capitol before their arrival on

January 6th discussing the need for a knife, baton and pepper spray. (Mault Statement of Offense, ECF No. 48 at pg. 3). They led the breach of the police line that allowed rioters to seize control of the West Plaza (Id. at pg. 5). And most egregiously, these two defendants accelerated their confrontations with police by assaulting officers with chemical spray in the Lower West Terrace tunnel (Id. at pg. 6). These two rioters planned and carried out their assault against officers on January 6th. This Court sentenced both defendants to 44 months for their targeted attacks on law enforcement.

The following defendants received sentences for assaultive conduct of less than one year:

1) Defendant Mark Jefferson Leffingwell, 21-cr-005-ABJ, (Statement of Offense, ECF No. 26) pleaded guilty to assaulting *two* officers (§ 111(a)(1)) *inside* the Capitol. The Court sentenced him to 6 months incarceration.

2) Defendant Matthew Council, 21-207-TNM (Statement of the Offenses, ECF No. 55) also pleaded guilty to assaulting an officer (§ 111(a)(1)) *inside* the Capitol. The government asked for 30 months imprisonment and the Court sentenced Mr. Council to 6 months of home detention.

3) Defendant Grayson Sherrill, 21-cr-282-TSC (Statement of Offense, ECF No. 104) pleaded guilty to assaulting an officer with a metal pole (§ 111(a)(1)) and then took that pole *inside* the Capitol. The government asked for 41 months and the Court sentenced Mr. Sherrill to 7 months incarceration.

4) Defendant David Alan Blair, 21-cr-186-CRC (Statement of Offense, ECF

No. 51) pleaded guilty to Civil Disorder (18 U.S.C. § 231(a)(3)) but his offense conduct included striking an officer in the chest with a lacrosse stick adorned with a Confederate battle flag. The Court sentenced Mr. Blair to 5 months in prison.

We respectfully submit to the Court that these cases of defendants assaulting officers *inside* the Capitol or outside with a pole and lacrosse stick are more analogous to Grady's conduct. But in contrast to Grady's sudden event, these defendants targeted and attempted to injure or incapacitate officers.

Finally, Grady is unlikely to benefit from First Step Act time credits due to his age. Bureau of Prison (BOP) inmates under 26 receive a starting score of 35 due to perceived recidivism risk with PATTERN (Prisoner Assessment Tool Targeting Estimated Risk and Needs). *See* https://bop.gov/inmates/fsa/pattern.jsp . Grady's two years of full compliance with this Court's release order indicates that he will not re-offend but this highly relevant and recent evidence of law-abiding conduct will not be credited by BOP.

### III.  CONCLUSION

This is a *sui generis* case. He is a first offender who bore no intent to target or harm any officer. We humbly ask this Court to show mercy on Grady Owens.

                Respectfully submitted,

                _____/ s /_____
                Pat Munroe Woodward, Jr., Esq.
                D.C. Bar No. 436662
                1783 Forest Drive, No. 330
                Annapolis, MD  21401
                Phone:  202-246-4679
                Fax:  410-216-9812
                patmwoodwardjr@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of June 2023, I electronically filed the foregoing pleading with the Clerk of Court using the CM / ECF system, which will send an electronic notification of such filing to all counsel of record.

_____/s/_____
Pat Munroe Woodward, Jr., Esq.
Counsel for Mr. Owens